IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LISA L.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 3:17-cv-01874-AA
**OPINION AND ORDER**

---

AIKEN, District Judge:

Plaintiff Lisa L. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income and Disability Insurance Benefits on October 14, 2014. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

/ / /

/ / /

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Plaintiff was born on October 2, 1967. She completed school through the 8th grade and previously worked as an accounts receivable clerk, billing clerk, and housecleaner. Plaintiff was five feet tall and weighed two hundred and sixty-seven pounds at the time of her application.

On August 27, 2012, plaintiff filed for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). In her applications, plaintiff alleged disability beginning June 2, 2003. She alleged that she was disabled by a combination of physical and mental impairments, including personality disorder, major depressive disorder, bi-polar disorder, chronic pain, hypertension, obesity, fibromyalgia, degenerative disc disease, lumbar disc disease, irritable bowel syndrome, peripheral neuropathy, pedal edema, breast abscess, bell's palsy, obstructive sleep apnea, panic disorder, and dysthymic disorder.

Her claims were denied initially on December 4, 2012. They were denied upon reconsideration on March 3, 2013. On May 1, 2013, plaintiff filed a written request for hearing before an Administrative Law Judge ("ALJ"). An administrative hearing was held on September 8, 2014, where plaintiff was represented by counsel. Plaintiff and vocational expert ("VE") offered testimony. The ALJ rendered an unfavorable decision on October 14, 2014. The decision was appealed to the Appeals Council, and on March 1, 2016 the Appeals Council remanded the case for further deliberation under the new and material evidence provision of the regulations (20 C.F.R. §§ 404.970, 416.1470). After a supplemental hearing on September 21, 2016, the same ALJ issued a second unfavorable decision finding plaintiff not disabled under the Act on December 8, 2016. On February 9, 2017, Plaintiff requested Appeals Council review of the ALJ's second decision. On September 20, 2017, the Appeals Council denied plaintiff's request for review, and the ALJ's decision was made final. Thereafter, plaintiff filed a timely complaint in this court.

## STANDARD OF REVIEW

The district court must affirm the ALJ's decision unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Harmless legal errors are not grounds for reversal. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted). The court must evaluate the complete record and weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or

combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work' and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" since the alleged onset date of June 2, 2003. Tr. 20. At step two, the ALJ found that plaintiff had severe impairments of "a bipolar disorder with depression and anxiety; post-traumatic stress disorder[]; a personality disorder; a history of polysubstance abuse, in remission; sleep apnea; Bell's palsy; fibromyalgia; degenerative disc disease; venous stasis; urinary incontinence; obesity; migraine headaches; and chronic obstructive pulmonary disease[.]" Tr. 20–21. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment. Tr. 21–23.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); § 416.920(e). The ALJ found that plaintiff

> has the [RFC] to lift and carry 10 pounds frequently and 20 pounds occasionally. She can sit about six hours in an eight-hour workday. She can stand and walk about four hours in an eight-hour workday. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She needs to alternate between sitting and standing about every hour but the change in position would be brief (less than five minutes) and she could remain at the workstation and remain productive. She needs a bathroom break for about five minutes every hour and work within 200 feet from a restroom facility. She should avoid concentrated exposure to fumes, odors, dusts, gases and other pulmonary irritants. She can do simple, routine work with occasional contact with supervisors and coworkers, but no public contact.

Tr. 23. At step four, the ALJ found plaintiff "unable to perform any past relevant work." Tr. 28. At step five, the ALJ considered plaintiff's age, education, work experience, and RFC and found

there were other jobs existing in significant numbers in the national economy that plaintiff could perform, including addressing clerk and document preparer. Accordingly, the ALJ found that plaintiff was not disabled under the Act.

## DISCUSSION

Plaintiff contends that the ALJ committed reversible error at step five because (1) he mistakenly included the job of document preparer in the RFC even though that job required a higher level of reasoning than that which plaintiff retains and (2) the remaining job of addressing clerk does not exist in significant number in the national economy to support an ALJ's finding that plaintiff was not disabled.

I. *Plaintiff's RFC and Reasoning Level*

Plaintiff argues that the job of document preparer which the ALJ found to be appropriate for her is inconsistent with her assessed RFC. The Commissioner concedes that the ALJ erred but argues that the error was harmless.

I agree that the ALJ erred. The Ninth Circuit has held that there is "an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). The ALJ found plaintiff was limited to "simple, routine work" in his RFC assessment. But, the document preparer's reasoning requirement is classified as Level 3 in the Dictionary of Occupational Titles ("DOT"). DOT 249.587-018, 1991 WL 672349. That classification requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and to] [d]eal with problems involving several concrete variables in or from standardized situations," which is much more taxing than engaging in simple and routine work. *Id.* There is, then, a conflict between the RFC assessment and the reasoning requirements of a document

preparer. Although further clarification could have resolved this tension, the ALJ did not elicit additional explanation from the VE. Therefore, I find that document preparer jobs cannot be considered in the total number of available jobs for plaintiff in the national economy and cannot support the ALJ's non-disability finding at step five.

When a district court finds that the ALJ erred in his analysis, the next question is whether such an error was harmless. *See Garrison*, 759 F.3d at 1009. The core issue on appeal is whether appropriate jobs exist in significant number to support the ALJ's non-disability determination. Therefore, if a significant number of appropriate jobs still exist in the national economy even without considering the document preparer job, the ALJ's error is harmless and his decision will be affirmed. *Stout*, 454 F.3d at 1054.

II.  *Whether Appropriate Jobs Exist in Significant Number for Plaintiff in the National Economy*

Plaintiff argues that addressing clerk jobs have been eliminated by computers and, presumably, this means that the actual job figure is less than the 11,084 cited by the VE. She also argues that 11,084 addressing clerk jobs does not meet the significant number standard. The Commissioner first argues that the ALJ found 11,084 addressing clerk jobs to exist in the national economy and that this is enough to meet the "significant number" requirement for purposes of disability analysis. Alternatively, the Commissioner argues that even if the number of addressing clerk jobs doesn't meet the significant number standard, that the 17,390 production assembler jobs that the VE identified, but which the ALJ mistakenly left out of his opinion, coupled with the addressing clerk jobs meets the significant number standard.

  A.  *Whether the ALJ Erred in Crediting 11,084 Addressing Clerk Jobs*

ALJs are responsible for making credibility determinations, resolving evidentiary conflicts, and resolving ambiguities. *Garrison*, 759 F.3d at 1009 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). I must uphold an ALJ's determination absent harmful error and if supported by substantial evidence. *Id.* Even if evidence exists to support more than one rational interpretation, the Court is bound to uphold the ALJ's interpretation. *Edlund*, 253 F.3d at 1156.

Plaintiff argues that the job of addressing clerk no longer exists in significant numbers, and that the 11,084-figure cited by the VE is presumably inaccurate. Plaintiff points to an exchange at her hearing between the ALJ and the VE where the VE stated that he was planning to survey the labor market to determine whether addressing clerk jobs had been eliminated because of computers. I find plaintiff's argument unpersuasive. The ALJ found the VE's testimony supportive of the conclusion that addressing clerk jobs are still validated job because the VE testified that a recent study suggests that addressing clerk jobs still exist. Plaintiff takes no issue with the VE's qualifications or with the study relied on by the VE. Absent more, I must conclude that the ALJ's decision to credit the VE's testimony is sound and supported by substantial evidence. *Gutierrez*, 740 F.3d at 522 (citation and internal quotation marks omitted).

B. *Whether 11,084 Jobs Meets the Significant Number Standard*

The Ninth Circuit has not created "a bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (amend. Nov. 14, 2012). While 1,680 jobs was not a significant number in *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (amend. Nov. 14, 2012), 25,000 jobs in the national economy was a significant number in *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). While *Gutierrez* acknowledged that the Eighth Circuit Court of Appeals has found 10,000 jobs in the national economy to be a significant number in *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997), and

seemingly in an approving manner, it has yet to endorse a number below 25,000 with respect to the significant number standard. *Gutierrez*, 740 F.3d at 529. Indeed, a subsequently unpublished Ninth Circuit decision that interpreted *Gutierrez* rejected 10,000 as a significant number. *Randazzo v. Berryhill*, 725 F.App'x. 446, 446 (9th Cir. 2017).

Here, the Court finds that 11,084 jobs does not meet the significant number standard. The court in *Gutierrez* found that 25,000 jobs in the national economy meets the significant number standard but even that presented a "close call." *Gutierrez*, 740 F.3d at 529. *Randazzo* later rejected 10,000 jobs in the national economy as meeting the significant number standard. *Randazzo*, 725 F.App'x. at 446. Other recent Ninth Circuit cases are consistent with this understanding and have not held anything below 25,000 to be significant. *See, e.g., Lemauga v. Berryhill*, 686 F.App'x. 420, 422 n.2 (9th Cir. 2017) ("We note that this court has never found [12,600] to be significant."). While 11,084 jobs may have been significant under precedent for other circuit courts, *see, e.g., Johnson*, 108 F.3d at 180; *see also Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 national jobs significant), *Randazzo* is the clearest indication of where the Ninth Circuit sees the numerical floor for what constitutes a significant number of national jobs. That number is at or around 25,000. Because 11,084 jobs is well below that threshold, I agree with plaintiff that this not a significant number.

At the September 21, 2016 administrative hearing, the VE testified that the someone with plaintiff's RFC could also perform work as a production assembler. The VE noted that "it is a light-rated job with an SVP: 2 [and] there are 17,390 in the national economy." Tr. 68. The ALJ, however, did not address this job in his written decision. Rather, the ALJ only relied on the previously discussed positions of addressing clerk and document preparer.

The Commissioner argues that even if 11,084 addressing clerk jobs does not meet the significant number standard, the addressing clerk jobs plus the 17,390 production assembler jobs that the VE testified to but the ALJ did not opine on would total 28,474 jobs and would be a significant number. The fact that production assembler was not cited by the ALJ, the Commissioner argues, is harmless error and so the Commissioner invites this Court to fill the gap by citing persuasive authority from this district that acknowledges the gap filling approach taken by other districts yet finds no need to gap fill in that case. *Thornbrugh v. Berryhill*, 2018 WL 1509162, at *7 (D. Or. Mar. 27, 2018).

I decline this invitation. Courts "are constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). This rule stems from the separation of powers concerns outlined in *S.E.C. v. Chenery Corp.*, 332 U.S. 194 (1947), where the Supreme Court explained that courts empowered to review administrative decisions may not affirm administrative actions by substituting their own consideration of a proper basis for affirmance; they must review agency action "solely by the grounds invoked by the agency." *Chenery*, 332 U.S. at 196. Contrary action would "propel the court into the domain which Congress has set aside exclusively for the administrative agency." *Id.* Other circuits have cited *Chenery* for a similar proposition in social security cases. *See, e.g., Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery*[.]").

The ALJ did not address whether production assembler would be appropriate for plaintiff. The transcript indicates that plaintiff needs hourly bathroom breaks and a reasonable ALJ could conclude that production assembler jobs may not be conducive to plaintiff's medical condition.

The ALJ, then, may not have found the job of production assembler to be consistent with his RFC determination. As plaintiff correctly notes, the ALJ determined that plaintiff could only conduct "*simple* routine work" but production assemblers are required to carry out "*detailed* but uninvolved" instructions. DOT 706.687-010, 1991 WL 679074. Because the Ninth Circuit has found that a limitation to "simple" tasks excludes performance of work that requires "detailed" instructions, the ALJ may have thought that the job of production assembler was unsuitable for Plaintiff. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1003 (9th Cir. 2015) (remanding the case to the ALJ because he failed to resolve a conflict between his RFC determination of "simple one- or two-step instructions" and the demands of jobs that require understanding of "detailed instructions" under Level Two reasoning). Given these alternate interpretations, there is reason to believe that omitting the production assembler job was not an unintentional error by the ALJ. I cannot substitute my judgement for that of the ALJ. *Edlund*, 253 F.3d at 1156. Therefore, because it is not addressed in his written decision, I cannot assume that the ALJ would have found the job of production assembler suitable for plaintiff if that job was addressed in his opinion.

Since the number of production assembler jobs around the country cannot be included in the total number of jobs available to plaintiff, I am left to only consider the number of available addressing clerk jobs. The ALJ found that 11,084 addressing jobs exist in the national economy. This number does not meet the standard for jobs existing in significant numbers in the national economy. Therefore, I find that the ALJ committed harmful error. On remand, the ALJ should gather new testimony on whether there are jobs available in significant numbers in the national economy that plaintiff could perform.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings to determine whether there are other jobs available in significant numbers in the national economy that plaintiff can perform.

IT IS SO ORDERED.

Dated this 5 day of December, 2018.

*Ann Aiken*
Ann Aiken
United States District Judge